## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RODRICK D. CANNON,                          *

Plaintiff,                                  *

v.                                          *          Civil Action No. RDB-21-775

LT B. CAPLE,                                *
WARDEN JEFF NINES, and
OFFICER MONZEL SMITH,                       *

Defendants.                                 *
                                            *
                                          ***

## MEMORANDUM OPINION

Self-represented Plaintiff Rodrick D. Cannon, a state inmate, brough this civil action pursuant to 42 U.S.C. § 1983 against Lt. B. Caple, Warden Jeff Nines, and Officer Monzel Smith, asserting violations of his constitutional rights arising from an altercation, retaliation, and interference with his administrative remedies at North Branch Correctional Institution ("NBCI") located in Cumberland, Maryland. ECF No. 15.[1]   As relief, he seeks monetary damages and injunctive relief.  *Id*.

On November 12, 2021, Defendants Lt. Caple, Officer Smith, and Warden Nines filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment in response to self-represented Plaintiff Rodrick D. Cannon's Amended Complaint.[2]   ECF 22.   Cannon filed a

---

[1] An amended complaint replaces the original complaint filed.  The general rule is, "an amended pleading ordinarily supersedes the original and renders it of no legal effect."  *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001), quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (noting exception for purposes of appellate review of claims dismissed in original complaint that were not included in amended complaint).  Therefore, Cannon's Amended Complaint, ECF 15, shall serve as the operative pleading.

[2] Defendants' dispositive submission will be treated as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered.  *See Bosiger v. U.S. Airways*, 510 F. 3d 442, 450 (4th Cir. 2007).

Response in Opposition with exhibits and an affidavit, and Defendants filed a Reply.[3]  ECF 27,

28.  In his Response, Cannon relinquishes his claims against all defendants other than Officer

Smith.[4]  ECF 27 at 8.  A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the

reasons stated below, the Court will DENY Cannon's request for injunctive relief, GRANT

Cannon's voluntary dismissal as to Defendants Warden Nines' and Lt. Caple's, DENY Defendants

Warden Nines and Lt. Caple's Motion as MOOT, and GRANT Officer Monzel Smith's Motion,

construed as a Motion for Summary Judgment.  Accordingly, the Amended Complaint is dismissed

as to Defendant Warden Nines and Lt. Caple and summary judgment is entered in favor of

Defendant Officer Monzel Smith.

## BACKGROUND

### I.      October 29, 2020 Incident

#### A.  Plaintiff's Allegations

On October 29, 2020, Cannon and defendant Officer Smith had a disagreement following

a discussion regarding phone use in the housing unit.  ECF 15 at 2 (Amended Complaint); 22-5 at

6 (Intelligence and Investigative Division ("IID") report).  Cannon, in a verified declaration,

contends that Officer Smith pushed him and Cannon responded by pushing back.  ECF 27-2 at 3

(Declaration of Cannon).  Specifically, Cannon declares that he was in the dayroom with a group

of 15 inmates with only eight phones available.  *Id*. at 1.  Cannon asked Officer Smith about the

lack of sufficient phones.  *Id*.  According to Cannon, Officer Smith left to discuss the matter with

---

[3] Cannon also filed correspondence styled "Plaintiff's Addendum to his Opposition to Defendants' Pending Dispositive Motion."  ECF 29.  Defendants moved to strike the addendum, arguing correctly that it constitutes an unauthorized surreply.  ECF 30.  Nevertheless, because Cannon proceeds *pro se*, and because defendants' motion will be granted and the case dismissed, the surreply will be allowed and defendants' Motion to Strike denied.

[4] Because Cannon stated his intention to dismiss any claims against Warden Nines in the Amended Complaint (ECF 15 at 8) as well as his intention to only proceed against Officer Smith in the response to Defendants' Motion, (ECF 27 at 8), the claims against Nines and Caple are dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A) and (a)(2).

a sergeant, and he returned to say that 15 inmates were allowed in the dayroom at that time.  *Id*.
Cannon then asked to speak with the sergeant.  *Id*.  Officer Smith left again and returned to tell all
inmates who could not use the phone to go back to their cells and they would have an opportunity
to use the phone later.  *Id*. at 2.  Officer Smith, according to Cannon, told Cannon to "check your
fellow inmates about going into the dayroom using phones when it's not their time," to which
Cannon replied, "that's not my job."  *Id*.  Cannon then asked Officer Smith for his name, and "[i]n
immediate response to [the] inquiry, defendant pushed [Cannon] in [his] chest while
simultaneously stating 'I don't have to tell you a motherfucking thing.'" *Id*. at 2-3.  In response to
Officer Smith's physical action, Cannon "pushed him and stated, 'don't you ever put your hands
on me again.'"  *Id*.  Cannon states that Officer Smith then "stated 'oh yeah what about this' and
stepped close enough to come into physical contact with [Cannon] and then [Officer Smith] began
to move his waist, genital area, and stomach against those areas of [Cannon]."  *Id*. at 3.  Officer
Smith pulled out his handcuffs and told Cannon to go back to his cell or go to lock up.  *Id*.  Cannon
went back to his cell.  *Id*.

As a result of the incident Cannon was charged with an inmate rule violation.  During the
hearing on the violation, Cannon presented the following statement:

> [W]e came out for rec to use the phones, there were only 8 phones and there was
> 12 people in the dayroom, I asked to speak to a Sergeant, I was let out of the
> dayroom, I spoke with the officer about it, I asked to speak to the Sergeant, the
> officer became irate and he pushed me, I pushed him back and told him not to put
> your hand on me again, I asked him for his name, the officer bumped me with his
> stomach, he bumped me on purpose, when I put my stuff on the desk we were about
> a foot away from each other, the officer started everything when he became vulgar,
> as he was going off he pushed me, when he pushed me I stepped back a little bit
> and then I pushed him, he didn't try to put handcuffs on me, he put the cuffs in the
> air and he gave me a choice to lock in or get locked up, I went to my cell, I wasn't
> going to fight him.

ECF 22-3 at 11.

### B. Defendant's Response

Officer Smith's account of the altercation provides that Cannon:

> came out of the dayroom, was very agitated and assaulted me. During that interaction I did not make any sexual statements or gestures to inmate Cannon and did not touch him in a sexual manner. During the interaction, because of inmate Cannon's escalating anger, physical aggression, and pushing me, I ordered him to present his arms to be placed in restraints and he refused. Eventually, he cooperated with my order for him to return to his cell.

ECF 22-6 at 2 (Declaration of Officer Smith).

On the date of the incident, Officer Smith signed a verified Rule Violation Notice in which he stated that:

> [I]nmate Cannon began to complain that there were not enough phones for the day-room. Inmate Cannon became very aggravated and argumentative. Inmate Cannon moved closer to me and began to yell. I ordered Inmate Cannon to move back and return to his cell. Inmate Cannon threw his property on my desk and moved toward me bumping his torso area against me. I put my hands up in defense, and Inmate Cannon immediately raised his hands and pushed me in the chest area. I stepped backward to create distance. I removed my handcuffs from my cuff case and gave direct orders to Inmate Cannon to turn around and allow me to apply handcuffs. Inmate Cannon refused my orders. I attempted to place handcuffs on Inmate Cannon's right arm, and he aggressively pulled away from me and began to walk away. To avoid further confrontation, I ordered Inmate Cannon to return to his cell. Inmate Cannon complied with orders.

ECF 23-3 at 5 (Notice of Inmate Rule Violation).

### C. Video Evidence

Video surveillance footage depicting the area where the altercation took place was submitted by Defendants. The video shows Cannon and Officer Smith having what appears to be a reasonably calm discussion, although there is no sound available, for nearly one minute. ECF 22-3 at 4 (DVD Video). At the 55 second point in the video, Cannon steps toward Officer Smith while simultaneously putting something down on the nearby counter, and each man's arms move quickly toward one another, however, it is difficult to see exactly what types of strikes each man

4

delivered due to the angle of the stationary surveillance camera.  *Id*.  At 59 seconds into the video, Cannon is seen walking toward Officer Smith as Officer Smith backs away; both men appear to be arguing with each other.  *Id*.  At approximately one minute, nine seconds into the video, the men reverse direction, Officer Smith walking toward Cannon, and Cannon backing away; the argument appears to continue.  *Id*.  It is unclear whether or not they are making physical contact as they move back and forth.  *Id*.  At approximately one minute, 16 seconds into the video, Cannon and Officer Smith stop moving around, but continue arguing.  *Id*.  At approximately one minute, 28 seconds, Cannon begins to walk away and jerks his hand back as Officer Smith follows him. *Id*.; *see also*, ECF 22-3 at 10 and 22-6.  After a few more seconds of arguing, Cannon walks out of the room and is off camera at one minute, 38 seconds.  *Id*.

## II.   Retaliation Claim

In his Amended Complaint, Cannon alleges that on January 7, 2021, Officer Smith called him a snitch in front of another inmate, ECF 15 at 4, and that at another time, Officer Smith asked an inmate when he was going to stab Cannon for being a snitch, *Id*. at 6.  Cannon alleges that these statements were in retaliation for his having filed Administrative Remedy Procedure (ARP) requests against Officer Smith regarding the October 29, 2020 incident.  *Id*.at 5.  For his part, Officer Smith declares that "[a]t no time did I make any comments to inmate Cannon's cellmate to suggest or say that inmate Cannon #367-113 is a snitch or should be injured."  ECF 22-6 at 2. Officer Smith further avers that he did not know that Cannon had filed an ARP against him regarding the October 29, 2020, incident until he was told about Cannon's ARP regarding the alleged snitch comment.  *Id*. at 3.

## III.   Administrative Procedures

### A.  Rule Violation

5

As a result of the October 29, 2020 incident, that day, Cannon was charged with rules violations including committing assault or battery on staff and disobeying an order.  ECF 22-3 at 5.  A hearing was held on November 6, 2020, and Cannon was found guilty of both violations.  *Id*. at 10-13.  On November 15, 2020, Cannon appealed the hearing officer's decision to the Warden. *Id*. at 18.  In his appeal, Cannon argued that the hearing officer was biased and cherry-picked evidence.  *Id*. at 18-19.

## B.  Administrative Remedy Procedure NBCI-2286-20

On November 22, 2020, Cannon filed an Administrative Remedy Procedure (ARP) request in which he alleged that he was assaulted by Officer Smith on October 29, 2020.  ECF 22-3 at 20. In his ARP, Cannon alleged Officer Smith "became irate and vulgar and pushed me in the chest area.  I immediately pushed him back, this person then started to bump me with his stomach smiling and then laughing."  *Id*. at 21.  Cannon further stated that Officer Smith was not in uniform during the alleged assault and not wearing a mask as required by Covid-19 protocols.  *Id*. at 21. This ARP was assigned case number NBCI-2286-20 and was procedurally dismissed.  *Id*. at 20. The dismissal response stated that "[i]t has been determined that the subject matter of your Request is under investigation by the Department's Intelligence and Investigative Division under case number IID-20-35-01739.  You may appeal this decision to the Commissioner of Correction."  *Id*.

On December 7, 2020, Cannon appealed the dismissal of ARP case number NBCI-2286-20 to the Commissioner of Correction.  ECF 22-7 at 4.  Cannon states as his reason for the appeal "the non-response of warden concerning my conviction of rules violation" and that "the crux of my appeal was that the hearing officer and the institution was able to cherry-pick the evidence in their favor to protect someone who was in violation of the officer code of conduct."  *Id*. at 4-5. The appeal contains no mention of the original ARP's complaint of assault by Smith.  *Id*.  Cannon

states that he did not appeal the substance of his ARP because he believed it to be procedurally barred, referencing the IID investigation as well as COMAR 12.02.28.04B which states that an inmate may not use the ARP process to resolve complaints under the Prison Rape Elimination Act. ECF 27 at 12; ECF 27-3.  The appeal was procedurally dismissed on January 8, 2021, because additional required information was not provided.  ECF 22-7 at 4.  Cannon was instructed to provide additional information by January 23, 2021.  *Id*.  The appeal was subsequently procedurally dismissed because of the pending IID investigation.  *Id*. at 6.

On January 27, 2021, Cannon filed a grievance with the Inmate Grievance Office ("IGO") regarding ARP NBCI-2286-20.  ECF 22-8 at 4.  In response, the IGO sent Cannon a letter on March 10, 2021, requesting additional information, *id*. at 9, to which Cannon responded on March 29, 2021, *id*. at 2-3 (Declaration of Robin Woolford, Deputy Director of the IGO).

### C.  Administrative Remedy Procedure NBCI-0067-21

On January 21, 2021, Cannon filed an ARP in which he alleged that Smith told his cellmate that Cannon was a snitch and asked his cellmate if he had stabbed him yet.  ECF 22-3 at 23-24. The ARP was assigned case number NBCI-0067-21; there is no indication that this ARP received a response.  *Id.* at 23.  On February 2, 2021, Cannon appealed ARP case number NBCI-0067-21 complaining that he had not heard anything from the Warden regarding his ARP or from IID and asking why Officer Smith was still working on his tier.  ECF 22-7 at 14.  A withdrawal form dated February 3, 2021, containing the apparent signatures of Cannon and Lt. Caple indicates that Cannon withdrew ARP NBCI-0067-21.[5]  *Id*. at 25.  On May 24, 2021, the IGO issued a letter to Cannon explaining that his appeal dated April 14, 2021, failed to include necessary documents and required him to submit the documents within thirty days.  ECF 22-8 at 18.

---

[5] Cannon denies that he withdrew this ARP and alleges that Lt. Caple forged his signature on the form.  ECF 15 at 6.

**STANDARD OF REVIEW**

A court reviewing a complaint in light of a Rule 12(b)(6) motion to dismiss accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court, however, need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of, and construe the facts in the light most favorable to, the non-moving party.

*Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other  facts immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Cannon was on notice that the court could treat the Motion as one for summary judgment and rule on that basis.[6]  Accordingly, the Court will review Cannon's claims against Defendants under the Rule 56(a) standard.

Defendants have attached evidence to their Motion including NBCI records and video evidence, ECF 22-3, Declarations of Lt. Caple and Officer Smith, ECF 22-4 and 22-6, the IID report regarding the October 29, 2020, incident, ECF 22-5, and records of ARP appeals and IGO grievances, ECF 22-7 and 22-8.  Plaintiff submitted an opposition to Defendants' Motion, ECF 27, and included a verified declaration, ECF 27-2, a copy of an ARP, ECF 27-3, and a partial copy of standards of conduct and performance, presumably for DPSCC employees, ECF 27-4.

## DISCUSSION

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56.  They argue that: (1) the Eleventh Amendment bars suit against them in their official capacities, ECF 22-1 at 14-15;[7] (2) Cannon failed to exhaust his administrative

---

[6] A notice sent pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975) advises a *pro se* plaintiff of his right to file responses to dispositive motions filed by defendants.  Cannon was issued such a notice on November 16, 2021.  ECF 23.

[7] Because Defendants' Motion is granted on other grounds, the Court need not address the issue of immunity.

remedies, *id*. at 15; (3) the evidence does not support Cannon's contention that Smith sexually assaulted him[8], *id*. at 19; (4) Cannon fails to state a claim of excessive force against Officer Smith, *id*. at 20; (5) Cannon's allegations of verbal threats and harassment by Officer Smith do not state a constitutional claim, *id*. at 21; (6) Cannon fails to state a claim of retaliation, *id*. at 22;[9] (8) Defendants are entitled to qualified immunity,[10] *id*. at 25; and (9) Cannon is not entitled to injunctive relief , *id*. at 27.  Because Cannon has voluntarily dismissed all claims unrelated to his allegations against Officer Smith, Defendants' arguments regarding those claims are not addressed below.

## I.      Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Cannon failed to exhaust his administrative remedies regarding each of the claims made in the Amended Complaint.  ECF 22-1 at 15.  If Cannon's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained

---

[8] Defendants also argue that Cannon's allegations of sexual misconduct are in retaliation for Officer Smith filing a rules violation against him, an allegation that is not directly relevant to the Court's ruling on their Motion; therefore, the allegation that Cannon retaliated against Officer Smith need not be addressed by the Court.  ECF 22-1 at 19.

[9] Because the Court finds that Cannon's claim for retaliation and threats must be dismissed for failure to exhaust administrative remedies, the Court need not address the merits of these claims.

[10] Because the Defendants' motion will be granted on other grounds, the Court need not address the issue of qualified immunity.

in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).[11]

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in

---

[11] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). The grievance process applies to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" for use by Maryland State prisoners for "inmate complaint resolution."  *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq*.; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP).  The grievance procedure applies to the submission of "grievance[s] against . . .  official[s] or employee[s] of the Division of Correction."  C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement."  COMAR 12.07.01.01(B)(7).  "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee.  C.S. § 10-206(a).

12

However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.07.01.05B 2.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. Then, the prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[12] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR

---

[12] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

13

12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The ARP process applies to the majority of inmate complaints including allegations that correctional officers used excessive force. COMAR 12.02.28.04(A)(7). Filing a complaint with the DOC's IID does not count as an administrative remedy and does not excuse the inmate from pursuing the administrative remedy process. COMAR 12.02.28.05(H).

14

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 635. In particular, the Supreme Court rejected a "special circumstances" exception to the exhaustion requirement. *Id*. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 636. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented

from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008).

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Cannon is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th

Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." This Court has consistently recognized this principle. *Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012). State statutes of limitation applicable to the filing of § 1983 complaints are subject to equitable tolling during the period of time a prisoner is exhausting administrative remedies. *Battle v. Ledford*, 912 F.3d 708, 719–20 (4th Cir. 2019).

Here, Cannon filed numerous ARP's that addressed the claims raised in his Amended Complaint. ECF 22-3 at 20-41. Cannon's ARP NBCI-2286-20, complaining that Officer Smith assaulted him was procedurally dismissed because "[i]t has been determined that the subject matter of your Request is under investigation by the Department's Intelligence and Investigative Division under case number IID-20-35-01739 and no further action will be taken under the Administrative Remedy Procedures at this level." ECF 22-3 at 20. Cannon was informed that he could "appeal this decision to the Commissioner of Correction." *Id*.

Regarding the sexual assault claim, while Cannon first characterized Smith's actions as a sexual assault in his Amended Complaint, the allegations in the original complaint are generally consistent with the allegations made in ARP NBCI2286-20. ECF 22-3 at 21. In that ARP, Cannon stated that Smith "became irate and vulgar . . . this person then started to bump me with his stomach

17

smiling and then laughing."[13]  ECF 22-3 at 21.  The allegations in the Amended Complaint appear to be a more detailed version of the allegations in the ARP and as such, the Court finds that the claims asserted here were sufficiently raised by Cannon in his initial ARP.

Cannon appealed the institutional denial of his ARP to the Commissioner of Correction, referencing ARP NBCI-2286-20, but he complained about his rules violation convictions rather than the alleged assault.  ECF 22-8 at 11.  Nonetheless, Cannon received no response to this appeal. Furthermore, while Cannon's appeal did not directly reiterate his allegations of assault, his primary argument both in the rules violation proceedings and the ARP was that Officer Smith pushed him and provoked him with sexual language and gestures, and that he pushed Officer Smith in self-defense: the same claims raised in his Amended Complaint.

Next, on January 27, 2021, Cannon appealed to the IGO again referencing ARP NBCI-2286-20. In his IGO appeal he complained of the assault on him as well as the unfavorable rules violation decision that resulted from the altercation.  ECF 22-8 at 4.  On March 10, 2021, the IGO instructed Cannon to provide additional documentation, *id*. at 9, a request to which he did not respond until March 29, 2021, after he filed the instant suit, *id*. at 3.

Cannon was required to exhaust his administrative remedies *prior* to filing a suit pursuant to § 1983.  *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); and *Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015).  Because Cannon did not complete the ARP process as described prior to filing his case, he has not exhausted his administrative remedies as to the alleged assault on October 29, 2020.

---

[13] This statement is consistent with one made during the rules violation hearing, during which Cannon stated that "the Officer bumped me with his stomach, he bumped me on purpose . . . the Officer started everything when he became vulgar . . ."  ECF 22-3 at 11.

Likewise, Cannon has not exhausted his administrative remedies as to his claim that Officer Smith violated his First Amendment rights by retaliating against him when he allegedly called Cannon a snitch and suggested that his cellmate stab him.  ECF 15 at 3-4.  Cannon filed ARP NBCI-0067-21 regarding these alleged statements.  ECF 22-3 at 23.  The parties dispute whether the ARP was withdrawn by Cannon or contains a forged signature indicating Cannon's withdrawal. ECF 22-3 at 25; ECF 15 at 6.  Nevertheless, on February 21, 2021, after not receiving a timely response from the Warden, Cannon filed an appeal to the Commissioner. ECF 22-7 at 14. The appeal was received on March 1, 2021. *Id.*  There is no indication in the record when the appeal to the Commissioner was resolved. Under Maryland law, if the Commissioner failed to act within 30 days, Cannon was entitled to assert his claim before the Inmate Grievance Office. Notably, Cannon's Complaint was received for filing in this Court on March 25, 2021, (ECF No. 1), before the time for the Commissioner to respond had expired. Additionally, Cannon did not file an appeal to the IGO until April 14, 2021, after he filed the instant lawsuit.  ECF 22-8 at 18.  The issue of whether the ARP was withdrawn by Cannon or fraudulently by someone else is not dispositive to the issue of exhaustion. The undisputed record demonstrates that Cannon did not complete the administrative process prior to filing suit.  Therefore, he did not exhaust his administrative remedies and his claim of retaliation is dismissed.

## II.     Excessive Force and Sexual Assault Claim

Even if Cannon's failure to exhaust his administrative remedies as to his excessive force and sexual assault claim could be excused, his claim would still fail.  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII.  This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  The Eighth Amendment is violated when

an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation.  *Williams*, 77 F.3d at 761.  On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).  In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response."  *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force.  *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).  "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action."  *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9).  Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury.  *Id*. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  *Hudson*, 503 U.S. at 9.  The extent to which injuries are modest is accounted for in the award of damages.  *See Wilkins*, 559 U.S. at 40.

Taking all facts in the light most favorable to Cannon, he has not demonstrated a constitutional violation.  Based on the description of the incident by both parties as well as video evidence, this was a short, minor event that did not result in anyone being injured and after which Cannon returned voluntarily to his cell.  The video shows that the entire interaction lasted less than two minutes. ECF 22-3 at 4.  While the video is inconclusive as to how much, if any, physical contact occurred between the parties it is clear that they engaged in a heated argument and Cannon first stepped aggressively toward Cannon.  Moreover, the video is consistent with the account Officer Smith gave in the rules violation hearing, ECF 22-3 at 10, and the IID investigation, ECF 22-5 at 14, describing Cannon as argumentative and escalating the argument, including Cannon putting his property down on the counter, stepping toward Officer Smith, and bumping into him. While it is not clear from the video who made contact with whom first, if at all, the video plainly shows a rapid escalation of the situation by Cannon who stepped toward Smith.[14]  ECF 22-3 at 4. Even if Smith pushed Cannon first after Cannon argued with Smith, put his property down, and stepped toward Smith, he would have been justified in doing so to maintain order.  Regardless, the video shows that there was no significant physical contact with the very purpose of causing physical harm or was meant to do so.

Additionally, Cannon's assertion that Officer Smith started the altercation and moved against him suggestively is without substantiation and is directly refuted by Smith's declarations. *See* ECF 22-3 at 10 and 22-6.  Although the Court cannot resolve conflicting affidavits on summary judgment, Cannon's version of events is at odds with the video of the incident.  *See Witt v. West Virginia State Police, Troop* 2, 633 F.3d 272, 276 (4th Cir. 2011) (stating that "when a video 'quite

---

[14] Cannon argues that video from other cameras would show more accurately what transpired.  ECF 27-2 at 4.  While a different camera angle may show more accurately exactly what type of physical contact occurred, by whom, and when, the video submitted by Defendants sufficiently shows that any possible physical contact was minor.

clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury would believe it, a court should not adopt [the plaintiff's] version of the facts for purposes of ruling on a motion for summary judgment.'") (*quoting Scott v.* Harris, 550 U.S. 372, 378 (2007).  Here, the video showed Cannon first moved toward Smith in an aggressive manner.  Furthermore, while the video is inconclusive as to whether Cannon or Smith ever actually laid hands on each other, it is clear from the video that Smith did not bump and gyrate against Cannon as alleged and that Cannon escalated the situation by moving toward Smith.

Even if Cannon had demonstrated that Officer Smith's actions, for example by using suggestive language and gestures, were not "a good-faith effort to maintain or restore discipline," he has certainly not shown that the quick and minor physical contact was inflicted "maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  Cannon has not shown that this single, small incident after which he walked back to his cell unharmed was "nontrivial;" instead, the evidence shows an example of a use of force that does not rise to the level of a constitutional violation.  *Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (quoting *Hudson*, 503 U.S. at 9)).

Nevertheless, taking Cannon's allegations as true, the actions described by Cannon and reflected in the video were not constitutionally excessive.  As such, summary judgment is warranted in favor of Officer Smith as to this claim.

**III.    Retaliation Claim**

Even if Cannon had exhausted his remedies as to the claim that Officer Smith retaliated against him for filing an ARP, that claim would still fail.  Cannon's retaliation claim is most fairly construed as a claim that he suffered retaliation for exercising his First Amendment right to petition

for the redress of grievances. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).

A Plaintiff can establish retaliatory conduct if the Defendant took an action that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (internal quotation marks and citations omitted). A Plaintiff must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the Defendant was aware of the First Amendment activity and that the retaliatory act was temporally proximate to that activity. *Id.*

Officer Smith averred that he did not know about Cannon's ARP regarding the October 29, 2020, incident until he learned of the ARP filed on January 15, 2021, regarding the alleged snitch comments.  ECF 22-6 at 3.  Cannon does not contest this statement.  ECF 27.  Since Officer Smith did not know about Cannon's ARP at the time he allegedly called him a snitch, those comments, even if true, could not have been made in retaliation for filing the ARP.  Accordingly, the retaliation claim must fail and Smith is entitled to summary judgment.

## IV.    Request for Injunctive Relief

Cannon requests an injunction commanding the Commissioner of Correction to instruct the Warden of NBCI to transfer him to protect him from further retaliation, or to prohibit Officer Smith and Lt. Caple from interacting with him.  ECF No. 15 at 9.  To survive summary judgment on a such a request for injunctive relief, "[a plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).  Cannon has not presented evidence that would satisfy any of the requirements for issuance of an injunction.  Accordingly, his request will be denied.

## Conclusion

Accordingly, Cannon's voluntary dismissal of the claims against Defendant Warden Nines and Lt. Caple IS GRANTED.  The Amended Complaint IS DISMISSED as to Defendants Warden Nines and Lt. Caples.  Defendants Warden Nines and Lt. Caple's Motion to Dismiss, or in the Alternative, for Summary Judgment IS DENIED AS MOOT.  Summary judgment IS GRANTED

in favor of Defendant Officer Monzel Smith.   Cannon's Request for Injunction IS DENIED.

Defendants' Motion to Strike is DENIED.

      A separate Order follows.


June 3, 2022_____/s/_____
Date                                        RICHARD D. BENNETT
                                     UNITED STATES DISTRICT JUDGE